# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**KIMBERLY J. MAYNARD,**

        **Plaintiff,**

  v.                                     **Civil Action 2:18-cv-959**
                                              **Judge George C. Smith**
                                              **Magistrate Judge Jolson**

**COMMISIONER OF**
**SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Kimberly J. Maynard, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and Administrative Law Judge under Sentence Four of § 405(g).

## I.    BACKGROUND

Plaintiff filed her first application for DIB and SSI in December 2010, which was denied by Administrative Law Judge Rita Eppler on December 10, 2013. (Doc. 8-3, Tr. 99–117).

ALJ Eppler made the following residual functional capacity ("RFC") finding:

> . . . the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is able to understand, remember and carry out simple routine repetitive tasks and is able to frequently interact with supervisors, coworkers and the public. She is limited to low stress work, which in this case is defined as having no strict production or time pressures.

(Tr. 109).

Plaintiff filed another application for DIB and SSI on April 7, 2015, alleging that she was disabled beginning December 13, 2013. (Doc. 8, Tr. 296). After her application was denied initially and on reconsideration, ALJ Irma Flottman (the "ALJ") held a hearing on August 7, 2017. (Tr. 69–97). On December 14, 2017, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 10–28). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on August 27, 2018 (Doc. 1), and the Commissioner filed the administrative record on November 9, 2018 (Doc. 8). Plaintiff filed her Statement of Errors (Doc. 9), Defendant filed an Opposition (Doc. 11), and Plaintiff filed a Reply (Doc. 12). In accordance with the Court's directive, the parties also filed supplemental briefs on the issue of *res judicata*. (*See* Docs. 13, 14, 15). Thus, this matter is now ripe for consideration.

**A. Relevant Medical Background**

Plaintiff's Statement of errors pertains to her mental health so the Court limits its discussion of her medical records to the same.

On May 4, 2012, Plaintiff underwent a psychiatric evaluation at North Community Counseling Center. (Tr. 531–34). She reported fighting depression for several years and described symptoms of insomnia, fatigue, crying spells, and decreased appetite. (Tr. 531). She also reported a history of suicidal ideation. (*Id.*). Records from her mental status examination indicate that she was well-groomed with average demeanor, eye contact, and activity. (Tr. 532). She had clear speech and no delusions, thoughts of self-abuse, aggression, or hallucinations. (*Id.*). Her thought processes were "circumstantial," and her mood was moderately depressed, anxious and angry. (Tr.

533). She had a "full" affect and was cooperative. (*Id.*). Plaintiff was diagnosed with PTSD and prescribed medication for her symptoms. (*Id.*).

Plaintiff continued to receive treatment at North Community Counseling Center throughout 2012 and 2013. On September 17, 2013, she reported a history of situational stressors, including constant threats of violence from neighbors and having a 16-year-old son with impulse control problems. (Tr. 436). On November 19, 2013, she reported that she was not doing well, as she was under "incredible stress." (Tr. 440). She also reported that she was having trouble with her kids and was experiencing financial difficulties. (*Id.*). Further, she stated that her medication had not improved her anxiety or sleep. (*Id.*).

On January 29, 2014, Plaintiff again reported situational stressors, including financial problems, demanding children, and difficulties with sleep. (Tr. 443). However, on March 18, 2014, she reported that she was sleeping better on Ambien. (Tr. 449). Further, she reported that family turmoil continued, although her son's behavior had improved. (*Id.*). Plaintiff did not receive treatment again until June 27, 2014, and had been off her medications due to missed appointments. (Tr. 452). According to exam notes, she had a dysphoric mood, and was easily agitated and frustrated. (*Id.*). She described multiple environmental stressors, primarily financial hardships. (*Id.*).

On July 17, 2014, Plaintiff reported that she was still struggling with dysphoria, anxiety, and feeling agitated. (Tr. 455). She stated that she experienced anxiety to the point of having nausea. (*Id.*). She continued to report financial stressors, including owing back rent. (*Id.*). Plaintiff explained that she had stopped taking Latuda because of its side effects. (*Id.*). Records from her mental status examination showed her to be dysphoric, overwhelmed, stressed, anxious, and irritable. (*Id.*). She had slow, hesitant speech. (*Id.*). She maintained good eye contact and

3

exhibited an organized thought processes but had poor insight and judgment and indicated non-compliance with her medications. (*Id.*).

Records from November 6, 2014, show that Plaintiff had not taken Latuda for approximately four weeks because of rescheduled appointments. (Tr. 462). She reported feeling stressed, overwhelmed, depressed, and agitated. (*Id.*). She described ongoing environmental stressors, including financial troubles. (*Id.*). On November 20, 2014, she described her mood as depressed and tearful. (Tr. 466). She indicated recent suicidal ideation with hopeless thoughts but had no intent or plan. (*Id.*). Mental status examination records show that she was depressed, tearful, irritable, and overwhelmed. (*Id.*). She displayed an organized thought process but had poor insight and judgment. (*Id.*).

On January 22, 2015, Plaintiff reported that her mood was improving. (Tr. 470). She described remaining hopeful about her future. (*Id.*). She rated her mood a five on a ten-point scale. (*Id.*). She used coping skills to deal with ongoing environmental stressors related to financial hardship and awaiting approval for disability benefits. (*Id.*). As for her medications, she had been taking her Latuda consistently and could see the improvement in her mood. (*Id.*). Her mood was dysphoric, but she was less tearful. (*Id.*) She remained anxious, stressed, and overwhelmed. (*Id.*). Exam records show that her speech was within normal limits and that she had good eye contact. (*Id.*).

On February 12, 2015, Plaintiff reported missing doses of Latuda. (Tr. 474). On March 26, 2015, she reported being more tolerant of stressful situations. (Tr. 482). She also reported that her mood had improved overall. (*Id.*).

Plaintiff continued to receive treatment at North Community Counseling Center in 2016. On June 15, 2016, she reported that she had stopped taking all medications three weeks prior. (Tr.

737). She was agitated, frustrated, anxious, and stressed. (*Id*.). She reported ongoing stressors stemming from her family, particularly issues with her daughter. (*Id*.). She denied thoughts of harm. (*Id*.). Notes from her mental status exam indicate an irritable, agitated, and frustrated mood. (*Id*.).

On July 14, 2016, Plaintiff described feeling stressed about her daughter's personal issues. (Tr. 708). She described feeling overwhelmed, frustrated, and anxious. (*Id*.). She reported some sleep disturbance, but that her appetite was stable. (*Id*.). She described ongoing mood fluctuations and tearfulness and continued to struggle with medication compliance. (*Id*.). Mental status examination notes indicate a mixed mood with good eye contact and some paranoid thoughts. (*Id*.).

On August 18, 2016, Plaintiff continued to report stressors connected to family and financial hardships. (Tr. 712). She continued to struggle with medication compliance and reported that she occasionally smoked marijuana to slow her racing thoughts. (*Id*.). She had been taking Abilify for seven days and reported that she was tolerating it well. (*Id*.).

On March 2, 2017, Plaintiff reported that she had been out of medications for nearly a month. (Tr. 720). On June 15, 2017, she reported feeling anxious about taking her prescribed medication. (Tr. 765). On July 19, 2017, she reported that her mood had improved, but that she continued to experience some mood fluctuations as well as intermittent tearfulness. (Tr. 769).

On June 4, 2015, John S. Reece, Psy.D. performed a consultative psychological evaluation. (Tr. 507–10). Plaintiff told Dr. Reece that, in the past, she would consume eight alcoholic beverages daily for a few months and also used marijuana daily. (Tr. 508). However, at the time of her evaluation, she denied using substances and stated that she had not used alcohol for three years and had not used street drugs for five months. (*Id*.). She indicated that she was involved in

5

outpatient counseling. (*Id*.). She stated that she had attempted suicide twice, with the most recent attempt in 2007. (*Id*.). She also had a history of two psychiatric hospitalizations with the most recent one occurring in 2007. (*Id*.). She was taking Latuda, Vistaril, and Temazepam, which were prescribed by her psychiatrist. (*Id*.).

Upon mental status examination, Dr. Reece noted that Plaintiff's appearance was neat and clean. (Tr. 509). She knew the purpose of the evaluation and was cooperative. (*Id*.). She exhibited no eccentric or impulsive behavior and maintained good eye contact and normal tone of voice. (*Id*.). Dr. Reece did not observe any psychomotor retardation or agitation, and Plaintiff did not exhibit outward signs of anxiety. (*Id*.). Plaintiff's fine and gross motor ability appeared unimpaired. (*Id*.). She had a constricted affect, and her prevailing mood was mildly to moderately anxious to dysphoric with some tears. (*Id*.). She also reported having problems with sleep and explained that she would get depressed. (*Id*.). She described feeling hopeless, helpless, full of guilt, and worthless, but reported no suicidal ideation. (*Id*.). Further, she stated that her energy was low and that she experienced mood swings. (*Id*.). Plaintiff denied delusions, hallucinations, obsessive thoughts, or compulsions. (*Id*.). She reported significant trauma related to spousal abuse and stated that she had intrusive memories, bad dreams, and flashbacks of trauma. (*Id*.). In the past, she would use drugs and alcohol as a coping mechanism. (*Id*.). Dr. Reece diagnosed Plaintiff with unspecified depressive disorder, unspecified anxiety disorder, unspecified trauma and stressor-related disorder, alcohol use disorder in remission, and cannabis use disorder in remission. (Tr. 510).

### B. The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful employment since December 13, 2013, the alleged onset date. (Tr. 13). The ALJ then noted that Plaintiff previously

filed an application for SSI in December 2010, and on December 10, 2013, ALJ Rita S. Eppler issued a decision finding that Plaintiff was not disabled. (Tr. 10–11). The ALJ explained the impact of this earlier finding:

> Unless new and material evidence or changed circumstances provide a basis for a different finding concerning a claimant's residual functional capacity, the Administration cannot make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act (Acquiescence Ruling 98-4(6); *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997)). In this case, the claimant has not produced new and material evidence documenting a significant change in the claimant's condition. Thus, Administrative Law Judge Eppler's previous residual functional capacity determination is binding.

(Tr. 10–11).

Accordingly, the ALJ adopted the earlier RFC finding in full. (Tr. 19). Next, The ALJ determined that Plaintiff suffered from the following severe impairments: depressive disorder, bipolar disorder, anxiety, and posttraumatic stress disorder. (Tr. 13). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 18).

The ALJ then turned to Plaintiff's mental health limitations. Specifically, the ALJ found that Plaintiff has mild limitations in remembering or applying information; moderate limitations in her ability to interact with others; moderate difficulties in concentrating, persisting, or maintaining pace, and mild limitations in adapting or managing herself. (Tr. 18–19). After providing a review of the medical evidence, the ALJ concluded:

> As discussed at length above, the claimant has a lengthy history of mental health complaints and mood fluctuations, primarily related to situational stressors. Further, she despite improvement in mood with medication, she often failed to maintain appointments to have her prescriptions refilled or simply chose to stop taking medications. Despite this medication non-compliance and ongoing stressors, the objective evidence does not demonstrate more than moderate limitations in mental functioning. Thus, the undersigned finds that the claimant is able to understand, remember, and carry out simple, routine, repetitive tasks. She

7

is able to interact frequently with supervisors, coworkers, and the public. She is also limited to low stress work, defined as having no strict production or time pressures.

(Tr. 24).

As for the opinion evidence, the ALJ first considered Dr. Leslie Rudy's and Dr. Katherine Fernandez's opinions. (Tr. 24–25). The ALJ assigned "some weight" to these opinions, "to the extent that they are consistent with the objective evidence and the above-described residual functional capacity contained in the prior Administrative Law Judge decision." (Tr. 24). However, the ALJ concluded:

> More weight cannot be given because this assessment is a deviation from the residual functional capacity contained in the prior Administrative Law Judge decision. The evidence does not demonstrate a material change in the claimant's condition since the issuance of that decision to warrant said deviation. Thus, limitations for more than simple tasks or requiring less than frequent interactions with others are not appropriate.

(Tr. 24–25).

Next, the ALJ assigned "little weight" to the opinion of Kimberly Harris, APN. (Tr. 25). Ms. Harris completed a Medical Functional Capacity Assessment on December 9, 2015, and opined that Plaintiff was moderately to markedly limited in mental functioning. (Tr. 25 (citing Tr. 529–30)). The ALJ assigned little weight to this opinion, explaining that "[t]he evidence does not substantiate more than moderate limitations in mental functioning" and concluding that "Ms. Harris's assessment for marked limitations are simply not consistent with the evidence of record." (*Id.*).

The ALJ then assigned "some weight" to Dr. John Reece's opinion, explaining that, "[m]ore weight cannot be given because Dr. Reece primarily reiterated objective findings upon mental status examination and the claimant's subjective reports" and because his opinion "was rather vague and failed to provide specific limitations in mental functioning." (*Id.*).

Finally, the ALJ considered Dr. Stephen Bittner's mental impairment questionnaire. (*Id.*). Dr. Bittner opined that Plaintiff has marked to extreme restrictions in a number of mental health areas. (*Id.* (citing Tr. 430–35)). The ALJ assigned "no weight" to this opinion, explaining:

> This assessment was completed prior to the alleged disability onset date and was considered in the prior Administrative Law Judge decision (Exhibit B1N15, 25). Because this opinion was provided prior to the alleged disability onset date, it is too remote. Further, the doctrine of res judicata precludes its consideration. Therefore, the undersigned gives no weight to this assessment.

(*Id.*).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff raises one error to the Court. (Doc. 9). She asserts that the ALJ committed reversible error because she improperly concluded that there was no new and material evidence in

the record, leading her to conclude that she was bound under *res judicata* by the prior ALJ's finding. (*Id.* at 6–11).

Until last year, the leading Sixth Circuit case on *res judicata* in the social security context was *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997). In *Drummond*, the Court concluded that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 126 F.3d at 842. Following that decision, the Social Security Administration issued an Acquiescence Ruling on *Drummond*:

> When adjudicating a subsequent disability claim with an adjudicated period under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim . . . unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or ruling affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 WL 283902, at *3 (June 1, 1998).

Roughly one year ago, the Sixth Circuit clarified the scope of *Drummond* in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931 (6th Cir. 2018). In that case, the claimant applied for disability benefits and was denied after the ALJ found she was capable of light physical exertion. 893 F.2d at 931. The claimant applied again, arguing that she had since become disabled. *Id*. The ALJ, however denied her claim, believing that—under *Drummond* and AR98-4(6)—he was "precluded" from revisiting the ALJ's earlier finding absent new and material evidence of a changed condition. *Id*. The Sixth Circuit corrected this misconception, explaining, that *res judicata* does not "prevent the agency from giving a fresh look" to the new application. *Id*. at 931. Importantly, the Court in *Earley* did not instruct ALJs to ignore the previous ALJ's findings. To the contrary, the Court gave ALJs room to use the earlier decision as a "legitimate, albeit not binding consideration[.]" *Id*. at 933.

10

In cases, like this one, where the ALJ issued a decision before the Sixth Circuit's ruling in *Earley*, the reviewing court must ask, "whether the ALJ, despite purporting to follow *Drummond*, gave the new evidence a fresh look." *Johnson v. Comm'r of Soc. Sec.*, No. 2:17-CV-13126, 2018 WL 6440897, at *15 (E.D. Mich. Oct. 22, 2018) (collecting cases), *report and recommendation adopted*, No. 17-13126, 2018 WL 6434778 (E.D. Mich. Dec. 7, 2018). If the ALJ gave the evidence a fresh look, then the decision satisfies *Earley*; if not, remand is required. *See id.*

When applying this "fresh look" test, it is important for courts to be mindful of the overarching principle from *Earley*: fairness to the applicant. *See Alexander v. Berryhill*, No. 5:18-CV-00163-GFVT, 2019 WL 2250631, at *4–5 (E.D. Ky. May 24, 2019) (explaining that "the point" of *Earley* is fairness to the applicant). To reach that result, "an applicant should have the opportunity for a full hearing, with no presumptions applied, when the claim covers a new period of time not addressed in the prior hearing." *Id.* Accordingly, if an ALJ is under the mistaken assumption that she is bound by the earlier ALJ's decision, the applicant is faced with "an unwarranted procedural burden . . . at the second hearing." *Ferrell v. Berryhill*, No. 1:16-CV-00050, 2019 WL 2077501, at *6 (E.D. Tenn. May 10, 2019).

In their briefing, the parties dispute whether Plaintiff did enough to prove that her condition changed after the first ALJ's decision. (*See generally* Docs. 9, 11, 12, 14, 15). The ALJ found that Plaintiff had "not produced new and material evidence documenting a significant change in the claimant's condition." (Tr. 11). The Court admits it is perplexed by this conclusion because, unlike the earlier ALJ, the ALJ in the instant matter found that Plaintiff has the severe impairments of depressive disorder, bipolar disorder, anxiety, and PTSD. (Tr. 13). The first ALJ, however, found that Plaintiff had the severe impairments of adjustment disorder with mixed anxiety and depression. (Tr. 105). The Court is therefore left with the following question: How could

Plaintiff's condition have remained substantially the same when the record somehow revealed new and different mental health diagnoses? The ALJ's opinion does not answer this question. Regardless, the question of whether Plaintiff produced new and material evidence of a changed condition is not before the Court. Certainly, "an applicant who introduces no new evidence should not have high expectations of success," at the same time, however, "the claimant should not come into the new hearing and face a presumption that the findings at the prior hearing were correct." *Alexander*, 2019 WL 2250631, at *5 (citation and quotation marks omitted). Accordingly, "the test should be whether *Drummond* prevented the ALJ from considering *all* the relevant evidence, not whether the ALJ properly considered *new* evidence." *Id*. (emphases in original).

Here, the ALJ failed that test. To be sure, the ALJ did not have the benefit of *Earley* and as a result, relied on the *res judicata* standard in place at the time. Nonetheless, it is clear from her decision that *Drummond* and AR 98-4(6) prevented her from giving a fresh look to all the relevant evidence. *See Alexander*, 2019 WL 2250631, at *5.

To start, the ALJ did not simply view the ALJ's findings as a "legitimate, albeit not binding consideration." *Earley*, 893 F.3d at 933. To the contrary, the ALJ applied a presumption—under *Drummond* and AR 98-4(6)—that she was bound to the earlier findings. (Tr. 10–11 (concluding that the "previous residual functional capacity determination is binding")). *Earley* does not permit such result. *See Earley*, 893 F.3d at 931 (correcting the ALJ's belief that he was "precluded" from revisiting the ALJ's earlier finding absent new and material evidence of a changed condition"). This mistaken, albeit well-meaning, presumption permeates the rest of the ALJ's analysis.

For example, when reviewing the opinions of Drs. Rudy and Fernandez, which were not before the first ALJ, the ALJ gave them weight only so far as they were "consistent with the

12

objective evidence and the above-described residual functional capacity contained in the prior Administrative Law Judge decision." (Tr. 24). The ALJ went on to explain:

> More weight cannot be given because this assessment is a deviation from the residual functional capacity contained in the prior Administrative Law Judge decision. The evidence does not demonstrate a material change in the claimant's condition since the issuance of that decision to warrant said deviation. Thus, limitations for more than simple tasks or requiring less than frequent interactions with others are not appropriate.

(Tr. 24–25). It is clear from the above that the ALJ did not give the opinions of Drs. Rudy and Fernandez a fresh look under *Earley*.

Similarly, when turning to Dr. Bittner's opinion, which was before the first ALJ, the ALJ concluded that *Drummond* prohibited her from assigning it any weight:

> This assessment was completed prior to the alleged disability onset date and was considered in the prior Administrative Law Judge decision (Exhibit B1N15, 25). Because this opinion was provided prior to the alleged disability onset date, it is too remote. Further, the doctrine of res judicata precludes its consideration. Therefore, the undersigned gives no weight to this assessment.

(*Id.*).

All of this shows that Plaintiff did not "have the opportunity for a full hearing, with no presumptions applied." *Ferrell*, 2019 WL 2077501, at *5. Plaintiff was therefore faced with "an unwarranted procedural burden . . . at the second hearing." *Id.* Accordingly, the ALJ's decision fails to satisfy *Earley*, and remand is appropriate. *See, e.g.*, *Ferrell*, 2019 WL 2077501, at *6 (remanding where ALJ failed to weigh the new evidence "on its own terms"); *Van Andel v. Comm'r of Soc. Sec.*, No. 1:17-CV-1021, 2019 WL 1375339, at *5 (W.D. Mich. Mar. 27, 2019) (remanding where ALJ repeatedly stated that she was bound by previous ALJ's finding regarding past relevant work); *Arendt v. Comm'r of Soc. Sec.*, No. 1:18-CV-00484, 2019 WL 1058263, at *10 (N.D. Ohio Mar. 6, 2019) (remanding where the ALJ concluded he was "bound" by the previous ALJ's decision, and as a result, failed to give a "fresh look" to the plaintiff's new

application); *Dunn v. Comm'r of Soc. Sec.*, No. 1:17-cv-634, 2018 WL 4574831, at *3 (W.D. Mich. Sept. 25, 2018) (remanding where the ALJ did not satisfactorily review the evidence under *Earley* but rather focused on the prior RFC findings); *Cassaday v. Comm'r of Soc. Sec.*, No. 1:17-CV-630, 2018 WL 4519989, at *3 (W.D. Mich. Sept. 21, 2018) (remanding and explaining that because ALJ believed she was required to adopt the previous findings and give deference to those findings, "she did not have the ability to perform a *de novo* review of the medical record to determine whether plaintiff was disabled after that date.").

Given this result, the Court finds guidance in the remedy set forth in *Earley*: "The ALJ should have another opportunity to review the application under the correct standard." 893 F.3d at 934. Plaintiff's request for an immediate award of benefits is denied because such a ruling "is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). That is not the case here.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the Administrative Law Judge under Sentence Four of § 405(g).

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which

14

objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:   July 25, 2019                                              /s/ Kimberly A. Jolson
                                                                   KIMBERLY A. JOLSON
                                                                   UNITED STATES MAGISTRATE JUDGE